AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

United States of America

v.

**DEREK J. HALL**
**DECHE DAVIS**

_____

*Defendants*

Case No. 25-MJ- 4137

## CRIMINAL COMPLAINT

I, **JOSEPH DEMARCO**, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between on or about October 1, 2025 through to October 22, 2025, in the Western District of New York, the defendants, **DEREK J. HALL** and **DECHE DAVIS**, committed violations of Title 21, United State Code, Sections 846 and 841(a)(1) (did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, to possess with intent to distribute, and to distribute cocaine); AND

On or about October 22, 2025, in the Western District of New York, the defendant, **DEREK J. HALL** and **DECHE DAVIS**, committed a violation of Title 18, United States Code, Section 924(c)(1)(A)(i) (possession of firearms in furtherance of a drug trafficking crime).

This Criminal Complaint is based on these facts:

SEE ATTACHED AFFIDAVIT OF DEA TFO JOSEPH DEMARCO.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

TFO JOSEPH DEMARCO, DEA
_____
*Printed name and title*

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P. 4.1 and 4(d) on:

Date: October 23, 2025

Cite and State: Rochester, New York

_____
*Judge's signature*

HONORABLE ELIZABETH A. WOLFORD
CHIEF, UNITED STATES DISTRICT JUDGE
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

DEREK J. HALL,                                      25-MJ- 4137
DECHE DAVIS,

                        Defendants.

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, JOSEPH DEMARCO, being duly sworn, depose and say:

1.      I am a Task Force Officer (TFO) with the Drug Enforcement
Administration (DEA), and as such I am an "investigative or law enforcement officer"
of the United States within the meaning of Section 2510(7) of Title 18, United States
Code, and am empowered by law to conduct investigations of and to make arrests for
offenses enumerated in Title 21, United States Code, Section 801, et sez., and Title 18,
United States Code, Section 2516(1).  I further states that I am the kind of Special
Agent as delineated in Title 18, United States Code, Section 3051. I have been a Task
Force Officer with the Drug Enforcement Administration since August of 2020, and I
am currently assigned to the DEA Rochester Resident Office. I am a Detective with
the Town of Greece Police Department ("GPD") Criminal Investigation Division.
Prior to becoming a DEA Task Force Officer, I became a police officer for the Town
of Greece Police Department in 2015.

2.      During my employment with the GPD, I completed the Basic Course
for Police Officers at the Monroe County Public Safety Training Center, located in

Rochester, NY, and four months of field training. This training included familiarization with the physical characteristics, packaging, and field testing of illegal drugs and narcotics. I served as a police officer with the GPD and was assigned to the Patrol Division from the completion of basic training until August 2019. In August 2019, I was assigned to the Greater Rochester Area Narcotics Enforcement Team (GRANET) and served in that position with the Rochester Police Department Special Investigation Section, as a police officer. I was promoted to the rank of Detective with the GPD in 2023, where I am assigned to the Criminal Investigations Division. During my career with the GPD, I have attended numbers of courses in the field of criminal investigations and also crime scene technical courses. I have also had the opportunity to conduct, coordinate, and/or participate in a number of successful investigations involving burglaries, robberies, weapons possession, narcotics possession, narcotics sales, arsons, assaults, sexual assaults, larcenies, and homicides. I have interviewed numerous defendants, victims, witnesses, and others who have been involved in or have knowledge of such crimes, including investigations relating to weapons and/or narcotics possession, trafficking, and distribution. I am familiar with the methods of distribution, manufacture, use, and appearance of many controlled substances, including cocaine, as well as their effects. I have been the affiant in support of multiple search warrants. During my time in the Special Investigations Section, GRANET, and the DEA Rochester Resident Office, I have participated in two long-term narcotics investigations that utilized the court-authorized interception of wire communications that resulted in the arrest of drug distributors and seizures of quantities of controlled substances and firearms. I am familiar with the habits, methods, routines, practices,

and procedures commonly employed by persons engaged in the armed trafficking of illegal drugs. In addition, I have had the opportunity to work with other experienced narcotic officers on the local, state, and federal level, which all possessed varying levels of experience as narcotics investigators. These narcotics officers have further provided your affiant with a basis of knowledge and further educated your affiant on the various characteristics and/or methods of distribution of these trafficking organizations and/or individual distributors.

## PURPOSE OF AFFIDAVIT

3. This affidavit is submitted in support of a criminal complaint charging Derek J. HALL ("HALL") and DECHE DAVIS ("DAVIS") with conspiracy to possess with the intent to distribute and to distribute cocaine, in violation of Title 21, United States Code, Sections 846 & 841(a)(1), and with possession of firearms in furtherance of a drug trafficking ccrime, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i).

4. I have been one of the lead agents and undercover agent in this investigation since its inception. As a result of my personal participation in this investigation, analysis of documents and records obtained by DEA agents, Detectives of the GPD and other law enforcement officers, information provided by confidential informants, the basis of whose knowledge and reliability will be described below, controlled purchases, and on physical surveillance of HALL and DAVIS, I am familiar with all aspects of this investigation. Since this affidavit is being submitted for limited purposes, I have not included every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish the

3

required foundation for the requested warrants and those facts that relate to the issue of whether probable cause exists to believe that HALL and DAVIS committed the above-mentioned offenses.

## FACTS ESTABLISHING PROBABLE CAUSE

5.     On or about August 19, 2025, members of the GPD responded to 191 Lida Lane for the report of a deceased male victim, D.J., who had passed away due to an apparent overdose. Following the overdose, your affiant, GPD, and DEA initiated an investigation into the source of supply of narcotics to the victim. Through that investigation, and specifically in August of 2025, HALL was identified as the individual supplying narcotics to the victim prior to the overdose. Through physical and electronic surveillance and controlled purchases of narcotics from HALL, the investigative team learned that HALL was supplying quantities of cocaine to customers throughout the Rochester, New York area. Further, HALL was identified as the user of (585) 802-6871.

6.     Your affiant and members of the GPD have utilized a confidential source ("CS") to conduct controlled purchases of cocaine from HALL. The CS is personally known to your affiant and members of the GPD and has been cooperating with law enforcement since October 2019. The CS's cooperation began pursuant to a plea agreement with the Government in exchange for hoped-for consideration at sentencing. Much of the information provided by CS has been corroborated through independent investigation, physical and electronic surveillance, and by information received independently and separately from other law enforcement agencies. CS has

provided agents reliable information in the past, relative to narcotics trafficking, which has been independently corroborated.

7.      During the third week of August 2025, your affiant and members of the GPD utilized the CS to conduct a controlled purchase of narcotics from HALL. To set up the purchase, the CS contacted HALL on his cell phone. HALL instructed the CS to meet at a pre-determined location to purchase $50 worth of cocaine. Prior to the purchase, the CS was searched with no contraband being located, was provided currency of law enforcement funds, and a recording device. The CS then arrived by vehicle at the pre-determined location, under the surveillance of law enforcement. Law enforcement observed HALL arrive at the location in a vehicle, exit his vehicle, and enter the CS's vehicle. The CS gave HALL $50 in exchange for a gram of cocaine. HALL is then observed leaving the location in his vehicle. After the controlled purchase, the CS met with law enforcement at a pre-determined location and provided law enforcement the recording device and the contraband that was purchased. The CS was searched again with no contraband being located. Your affiant conducted a field-test of the suspected cocaine, which weighed approximately 1 gram, and the test returned a positive test result for the presence of cocaine.

8.      During the first week of September of 2025, your affiant and members of the GPD utilized the CS to conduct a controlled purchase of narcotics from HALL. To set up the purchase, the CS contacted HALL on his cell phone. HALL instructed the CS to meet at a pre-determined location to purchase $50 worth of cocaine. Prior to the purchase, the CS was searched with no contraband being located, was provided currency of law enforcement funds, and a recording device. The CS and an undercover detective with the GPD ("UC") drove to the pre-determined location, under the

5

surveillance of law enforcement. Law enforcement observed HALL arrive at the location in a vehicle, and the CS and UC enter HALL's vehicle. The CS gave HALL $50 in exchange for 1 gram of cocaine. While still in HALL's vehicle, HALL agreed to sell cocaine to the UC and HALL instructed the UC to meet HALL at 10 Daisy Street. The UC drove to 10 Daisy Street and encountered HALL in the driveway of 10 Daisy Street which is next door to 419 Ridgeway Avenue. The UC then gave HALL $50 in exchange for 1 gram of cocaine. The UC then leaves the location. After the controlled purchase, the CS met with law enforcement at a pre-determined location and provided law enforcement the recording device and the contraband that was purchased. The CS was searched again with no contraband being located. Your affiant conducted a field-test of all of the suspected cocaine, and both tests returned a positive test result for the presence of cocaine.

9.    During the second week of September 2025, the UC contacts HALL on his cell phone to purchase a quantity of cocaine. HALL instructed the UC to meet at 10 Daisy Street to purchase $50 worth of cocaine. The UC arrives at 10 Daisy Street by vehicle under the surveillance of law enforcement. Prior to the UC arriving at 10 Daisy Street, members of law enforcement observed HALL utilize a key to enter the back door of 419 Ridgeway Avenue and enter the location. HALL is then observed exiting the back door of 419 Ridgeway Avenue and walking up to the passenger side door of the UC's vehicle. The UC then gave HALL $50 in exchange for 1 gram of cocaine. The UC then leaves the location. Your affiant conducted a field-test of the suspected cocaine, and the test returned a positive test result for the presence of cocaine.

10.     During the second week of October 2025, the UC contacts HALL on his cell phone to purchase a quantity of cocaine. HALL agreed to sell $50 of cocaine to the UC and the UC headed towards 10 Daisy Street. While the UC is enroute to the meet location, HALL texts the UC and instructs the UC to go to 1450 Lyell Avenue to meet with DAVIS in a black vehicle to purchase the cocaine. The UC arrives at 1450 Lyell Avenue and locates DAVIS and the black vehicle. DAVIS enters the UC's vehicle and hands the UC 1 gram of cocaine in exchange for $50 cash. DAVIS tells the UC that HALL was busy and that is why DAVIS handled the purchase. The UC then leaves the location. Your affiant conducted a field-test of the suspected cocaine, and the test returned a positive test result for the presence of cocaine.

11.     Through the course of the investigation, your affiant and members of the GPD have utilized physical and electronic surveillance to observe HALL routinely traveling to 419 Ridgeway Avenue and 364 Adeline Road. DAVIS has been observed routinely traveling to 364 Adeline Road operating the same black vehicle referenced in ¶ 10.

## Execution of Search Warrants

12.     On October 22, 2025, at approximately 3:00 a.m., members of the GPD executed a New York State search warrant at 419 Ridgeway Avenue, Rochester, New York and 364 Adeline Road, Greece, New York.

13.     Upon initial entry into 364 Adeline Road, HALL was located in the upstairs bedroom of the location. Upon search of the upstairs bedroom, law enforcement located the following in the closet: one (1) 9mm caliber, Pocket Nine Series 90 semiautomatic pistol, with an unknown serial number, and loaded with six

(6) rounds of ammunition; one (1) 9mm caliber, Glock 34 semiautomatic pistol, bearing serial number BHYT459, and loaded with eight (8) rounds of ammunition; and (3) one (1) 9mm caliber, Kel Tec semiautomatic pistol, bearing serial number E2U20, loaded with sixteen (16) rounds of ammunition; and approximately $2,500 U.S. Currency. In a safe, GPD located a 38 special caliber, Smith & Wesson semiautomatic pistol, bearing serial number 24K5409, loaded with six (6) rounds of ammunition, and an extended magazine with a thirty (30) round capacity. In a downstairs bedroom, GPD located a plastic bag of cocaine which was field tested and returned a positive result for cocaine.

14.    Upon initial entry into 419 Ridgeway Avenue, nobody was located inside of the residence. Investigators searched the north bedroom of the location which appeared to be HALL's bedroom based on multiple items of identification in the name of HALL being located. Specifically, in the north bedroom investigators located an expired New York State Identification card in HALL's name and mail in HALL's name. Also located in the north bedroom next to HALL's NYS ID was a 380 caliber, Walther PK-380 semiautomatic pistol, bearing serial number WB072488, loaded with eight (8) rounds of ammunition. The 380-caliber pistol was reported stolen out of Columbus, Ohio. Also located were fifty (5) rounds of .380 ammunition, a 9mm magazine, and additional ammunition. During a search of the kitchen, investigators located approximately fifty (50) grams of cocaine packaged in multiple new and unused baggies, multiple digital scales, empty baggies, Pyrex with residue, a plate, and razor blades. Also located in the kitchen was documentation belonging to HALL. Investigators searched the south bedroom of the location which appeared to be DAVIS's bedroom based on multiple items of mail and documentation in the name of

DAVIS. Located in the south bedroom was a hard hat which had the name "Deche D" which your affiant believes to be a nickname for DAVIS. Immediately next to the hard hat was a 380 caliber, Cobra Model CA380 semiautomatic pistol, bearing serial number CP071311 which was unloaded. Also located in the south bedroom was two knotted bags of cocaine and multiple new and unused baggies used for packaging narcotics.

15.     Based on my training and experience, drug dealers who possess firearms in the proximity of drugs, drug paraphernalia, and quantities of cash proceeds, do so to protect those drugs and proceeds from theft and, more generally, to further their drug trafficking operations.  This is particularly so when the guns are loaded and fully capable of being used in an emergency. Additionally, based on my training and experience, the previously detailed items seized are indicative of an intent to distribute cocaine, as opposed to possessing them for personal use. Further, based on my training and experience, your affiant is aware that traffickers of controlled substances commonly possess firearms in furtherance of their drug trafficking activities.

## INTERVIEW OF HALL & DAVIS

16.     After HALL was arrested, he was transported to GPD headquarters and placed inside of an interview room which is equipped with audio and video recording. GPD Detectives read HALL his Miranda rights at which time HALL waived his rights and agreed to speak with Detectives. In sum and substance, HALL admitted to possessing the two firearms located inside of the north bedroom of 419 Ridgeway Avenue. HALL further admitted to possessing the 38 Special Caliber revolver located in the safe of his bedroom. When discussing drug trafficking, HALL told Detectives

that he would get narcotics from others to sell to customers and would occasionally keep $10 cash. When Detectives asked HALL who lived at 419 Ridgeway Avenue he said DAVIS.

17.    DAVIS was arrested by law enforcement on October 22, 2025, in the area of Jefferson Avenue and Magnolia Street in the City of Rochester. After he was arrested, he provided GPD Detectives with the address of 419 Ridgeway Avenue as his residence.

## CONCLUSION

18.    Based on the above information, your affiant submits that probable cause exists to believe that between October 1, 2025 through to and including October 22, 2025, in the Western District of New York, HALL and DAVIS were in violation of Title 21, United States Code, Sections 846 & 841(a)(1) (conspiracy to possess with the intent to distribute and to distribute cocaine), and on or about October 22, 2025, in the Western District of New York, HALL and DAVIS were in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) (possession of firearms in furtherance of the drug trafficking conspiracy).

_____
TFO JOSEPH DEMARCO
Drug Enforcement Administration


Affidavit submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me telephonically pursuant to Fed. R. Crim. P. 4.1 and 4 (d) on October 23, 2025.

_____
HONORABLE ELIZABETH A. WOLFORD
Chief, United States District Judge

10